## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN JUNIOR TAYLOR,        :     Civil No. 1:18-CV-00910

              :

      Petitioner,        :

              :

      v.             :

              :

SUPERINTENDENT, LARRY   :

MAHALLY, *et al.*,        :

              :

      Respondents.    :     Judge Jennifer P. Wilson

### ORDER

Before the court is the report and recommendation of United States Magistrate Judge Joseph F. Saporito recommending that the petition filed by Petitioner John Junior Taylor ("Taylor") for a writ of habeas corpus be denied and dismissed with prejudice, and that the court decline to issue a certificate of appealability. (Doc. 38.) For the reasons that follow, the court will adopt in part and decline to adopt in part the report and recommendation, dismiss the petition with prejudice, and will issue a certificate of appealability.

### BACKGROUND[1]

On April 30, 2018, Taylor filed a petition for writ of habeas corpus. (Doc. 1.) The petition stated that Taylor was challenging the judgment of a May 25,

---

[1] Because the court is writing for the benefit of the parties, only the necessary information is included in this order. For a more fulsome discussion of the facts and issues in this case, the court refers to the report and recommendation. (Doc. 38.)

2007 conviction for first-degree murder for which he was sentenced to life without parole.  (Doc. 1, p. 1.)[2]

In the present action, Taylor's petition challenged his conviction on the grounds that he was deprived of his constitutional right to effective assistance of counsel.  (Doc. 1, p. 5.)  Taylor alleges that he was deprived because his trial attorney, Anthony Gutkin, had an actual conflict of interest that persisted "nearly to petitioner[']s trial."  (*Id.*)  Specifically, attorney Gutkin had represented a prosecution informant and witness, Thomas Taylor ("Thomas"), who testified against Taylor at trial.  Taylor argues that attorney Gutkin could not "resolve or cure the conflict 10 days before trial."  (*Id.* at 6.)

For these reasons, Taylor asked the court to grant a new trial or release from custody.  (*Id.* at 14.)  On February 1, 2019, counsel filed a traverse on behalf of Taylor.  (Doc. 27.)  Judge Saporito held oral argument on March 9, 2021. (Docs. 34, 36.)

The present petition follows Taylor's unsuccessful petition at the state level. In November 2012, Taylor filed a Post-Conviction Relief Act ("PCRA") petition. (Doc. 44, p. 21.)  Taylor's appointed counsel filed an amended petition, which alleged that Taylor's trial counsel had an actual conflict of interest.  (*Id.* at 21–22.)

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

The PCRA court held two hearings, one on November 6, 2013, and another on February 26, 2014. *Commonwealth v. Taylor*, No. 749 MDA 2016, 2017 WL 1952702, at *4 (Pa. Super. Ct. May 10, 2017).[3]  During the hearings, neither side called Taylor's trial counsel to testify in order to support or refute Taylor's factual allegations. *Id.*

The PCRA court noted that, while "prejudice is presumed when counsel is burdened by an actual conflict of interest, this is only so if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at *7 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).  The PCRA court found that there had been an actual conflict of interest, but that conflict "was resolved." *Id.* at *9.  Thus, Taylor's petition failed the first part of the *Cuyler* test.

Nonetheless, the PCRA court went on to assess whether, if there had been an ongoing actual conflict, it adversely effected Taylor.  The court concluded that, although attorney Gutkin had represented Thomas "during his federal difficulties, and in matters preceding that," it was "unaware of any circumstance(s) that affected" Gutkin's cross-examination of Thomas at Taylor's trial. *Id.* at *6.  The court's "careful and critical review of the record" led it to conclude that attorney

---

[3] In its opinion, the Superior Court appended the opinion of the PCRA court.  As a result, this opinion cites to the Superior Court opinion to reference both that opinion as well as the PCRA court opinion included therein.

3

Gutkin's cross-examination was "extensive and thorough. The attacks were pointed and no way mamby-pamby." *Id.* The PCRA court concluded that there was no "adverse action to the defendant." *Id.* at *9. Moreover, the court concluded that whatever actual conflict existed before trial "was resolved." *Id.*[4]

The Superior Court of Pennsylvania affirmed the PCRA court's denial of Taylor's PCRA petition. *Id.* at *1–*3. The Superior Court noted that the PCRA court had determined that "although an actual conflict of interest had existed during the critical states" of the trial attorney's representation of Taylor, "the conflict had been resolved without any prejudice to Taylor's case." *Id.* at *2 (citation omitted).

In affirming the PCRA court's denial of Taylor's petition, the court stated that based on its "independent review of the record," it was "compelled to agree with the PCRA court's determination that, by the time of Taylor's trial, any potential conflict of interest had been resolved." *Id.* at *3. The court noted that Taylor claimed that "Attorney Gutkin had confidential information that he could

---

[4] In greater detail, the court came to the following conclusions:

> Herein, we find an actual conflict, direct and immediately diametrically opposed, existed during the critical stages of legal representation. That conflict was resolved, without adverse action to the defendant, during the time that existed during the stages of legal representation of the actual conflict. The termination and waiver freed defense counsel to vigorously and zealously represent his client, which the record bears out. Therefore, this Court dismisses the defendant's PCRA petition.

*Taylor*, 2017 WL 1952702, at *4.

have used to discredit Thomas on cross-examination, and that Attorney Gutkin chose not to use such information in order to protect his law license." *Id.* at *2. The Superior Court concluded there was "no evidence of record" to support the argument. *Id.*

In his December 5, 2022 report and recommendation, Judge Saporito recommended that Taylor's petition be denied and dismissed with prejudice. (Doc. 38, p. 21.) He further recommended that the court decline to issue a certificate of appealability. (*Id.*) Taylor timely lodged objections to the report and recommendation along with a brief in support. (Docs. 43, 44.) Upon the court's direction, Respondents filed a brief in opposition to Taylor's objections, and Taylor filed a reply brief. (Docs. 48, 49.)

Taylor has nineteen objections. The first fifteen objections relate to Judge Saporito's legal conclusions and statements. The last four objections relate to Judge Saporito's factual statements and omissions. Here are the objections in full:

1) Petitioner objects to the Report's characterization and framing of his claim as one based on applying the ineffective assistance of counsel standard under *Strickland v. Washington*, 466 U.S. 668 (1984). *See* (Rep't at 10, 12-13, 18, 20-21). The standard applicable to a conflict of interest, as developed in Petitioner's traverse, is governed by *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

2) Petitioner objects to the statement in the Report that the Pennsylvania Superior Court rejected the conflict of interest claim by applying the "same legal standard" employed by the PCRA court. *See* (Rep't at 12). Although the PCRA court

applied, albeit unreasonably, the *Cuyler* standard, the Superior Court employed the incorrect *Strickland* standard, including the requirement that Petitioner prove prejudice. *Compare* App'x at 685, 691, 694-95 *with* App'x at 699, 701-02.

3) Petitioner objects to the statement in the Report that the Pennsylvania Superior Court "expressly adopted the reasoning of the PCRA court by reference and by appending a copy of the PCRA court's opinion as an attachment to the opinion." (Rep't at 12). The Superior Court adopted "the relevant factual and procedural background of this case" as set forth in the opinion of the PCRA court. App'x at 696. And the Court attached a copy of the PCRA court opinion, which was not otherwise available in an electronic database, for this reason. The Superior Court did not "expressly adopt the reasoning of the PCRA court" anywhere in its opinion. Thus, the Petitioner also objects to the Report's conclusion to "also look to the PCRA court's opinion." (Rep't at 12).

4) Petitioner objects to the legal standard on page 11 of the Report used in addressing his claim, as the governing statutory provision (quoted in the Report at page 10) permits a federal court to grant habeas relief if the state court decision is contrary to or an unreasonable application of clearly established federal law. The Superior Court's application of the wrong standard for addressing an "actual conflict of interest" claim is contrary to federal law.

5) Petitioner objects to the legal discussion on pages 12 and 13 of the Report, as Petitioner's "actual conflict of interest" is not governed by the *Strickland* ineffective assistance standard. So the discussion in the Report that the Third Circuit has held that the Pennsylvania ineffectiveness standard in *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016)2 adheres to Strickland has no application here. *See* (Rep't at 12). Thus, the Report's conclusion that Petitioner cannot show that the state court decision is "contrary to federal law" standard under 28 U.S.C. § 2254(d)(1) is wrong.

6) For the reasons noted in paragraph 5 above, Petitioner objects to the conclusion on page 13 of the Report that he is limited under Section 2254(d) to proving that the state court unreasonably applied *Strickland* or rendered an unreasonable factual determination.

7) Petitioner objects to the statement in the Report on page 14 that counsel was subject to a conflict of interest "until the attorney-client relationship between counsel and witness was terminated." Under the Pennsylvania Rules of Professional Conduct an attorney's duty to a former client does not terminate at the conclusion of the representation. *See* Pa. R.C.P. 1.6, 1.9.

8) Petitioner objects to the legal statement on pages 15 and 16 of the Report that both the PCRA court and the Superior Court denied his claim based on his failure to show that the actual conflict of interest "adversely affected the performance of defense counsel at trial." (Rep't at 15-16). The Superior Court denied the claim based on *Strickland* prejudice, that is, that Petitioner failed to prove that the "outcome of his trial would have been different." App'x at 702. This is not the same standard as the "adverse effect" one that governs based on *Cuyler*.

9) Petitioner objects to two points of legal discussion in footnote 10 of the Report.   First, the Report mischaracterizes the Superior Court's holding by stating that it "expressly and extensively" addressed Petitioner's claim under an "adverse impact" standard. (Rep't at 16 n.10). The Superior court clearly applied the Strickland prejudice standard: "Taylor failed to demonstrate that there is a reasonable probability that the outcome of his trial would have been different but for Attorney Gutkin's action or inaction." App'x at 702 (emphasis added). Second, the Report mischaracterizes both the argument in Petitioner's traverse and the Superior Court's opinion on the effect of trial counsel's withdrawal from representing the informant. The Superior Court clearly held that "any potential conflict of interest had been resolved because Attorney Gutkin had withdrawn from his representation in the unrelated federal court action pending against Thomas [the informant]."  App'x

at 702.  Contrary to the Report, therefore, this holding was not merely part of the discussion of the "relevant factual background." (Rep't at 16 n.10). And indeed, quoted portions of the Superior Court opinion later in the Report contradict the statement in footnote 10. *Cf.*, *e.g.*, (Rep't at 19).

10)   Petitioner objects to the legal conclusion in the quoted portion of the PCRA court's opinion on page 17 of the Report that the waiver freed defense counsel to "vigorously and zealously represent his client, which the record bears out." (Rep't at 17). To begin, the contents of this waiver are not of record. See App'x at 692 (trial court acknowledging "we could have easily made the record with a simple colloquy of the defendant. In hindsight, I would have."). And the record confirms the opposite—trial counsel's ethical restraints informed and limited his cross-examination of the informant. *E.g.*, at App'x 491-93, 501-02, 523. Trial counsel specifically advised the informant (and the jury) at the start of the cross examination: "I am not allowed to ask you anything which I may know about you that nobody else knows about you." App'x at 492.[5]

11)   Petitioner objects to the quoted portions of the Superior Court opinion in the Report, stating that to satisfy his burden of proof he is required to "identify confidential information" possessed by his trial counsel relating to the representation of the informant.  (Rep't at 18).  This standard would be impossible to meet, as counsel cannot be compelled to disclose confidential attorney-client information.

12)   Petitioner objects to the Report's characterization of the Superior Court's opinion as at first reviewing for "adverse effect" and then for whether he "otherwise demonstrated prejudice." (Rep't at 19).  The Superior Court's review rested on *Strickland* and its prejudice standard. App'x at 701-02.

13)   Petitioner objects to the Report's conclusion that he had to satisfy the *Strickland* standard in state court and now show that

---

[5] This objection and all subsequent are misnumbered in the court filing.  In this list and subsequent discussion, the court refers to the objections as if they had been properly numbered.

the Superior Court applied such standard unreasonably or rendered an unreasonable determination of the facts. *See* (Rep't at 20). The applicable standard is set forth in *Cuyler* and requires only a showing of "adverse effect."

14) Petitioner objects to the legal conclusion in footnote 11 of the Report that the review standards applicable under Section 2254 and 2255 provide a basis for distinguishing federal court decisions addressing "actual conflict of interest" claims on federal collateral review. (Rep't at 20 n.11). To begin, the deference applicable under Section 2254(d) to state court fact findings or determinations of ineffective assistance of counsel under *Strickland*, has no application when, as here, the state court applied the wrong standard. The supplemental authority simply addressed the appropriate relief for an "actual conflict of interest" using the correct prejudice standard—an "adverse effect" on counsel's performance. Moreover, the Report is incorrect that the Fifth Circuit in *United States v. Sheperd*, 27 F.4th 1075 (5th Cir. 2022), was a remand in a Section 2255 matter. Rather, it was a remand on direct appeal.

15) Petitioner generally objects to the dismissal of his petition with prejudice. See (Rep't at 21). Petitioner specifically objects to the recommendation that a certificate of appealability not issue when, as conceded by every court, his counsel in a first-degree murder prosecution labored under an "actual conflict of interest" in having to cross-examine a critical prosecution fact witness (the informant), who counsel concurrently represented in federal court.  As important, during the concurrent representation, the informant provided information to the prosecution and counsel repeatedly limited his cross-examination so as to, as he admitted, not jeopardize his license to practice law. *See, e.g.*, App'x at 491-93, 523.

16) The Report incorrectly states that the conflict-of- interest claim turns on the three-month period when counsel represented both the informant and Petitioner. See (Rep't at 4-5).  The Report, however, ignores the long-term personal, professional, and business relationship between counsel and the informant. *See* App'x at 446, 448, 491-92, 634, 663-64.

17)     The Report ignores the limited evidence against Petitioner without the testimony of the informant. For instance, the initial telephone call to the police reported that there were two shooters, which corresponded with the forensic evidence. *See* App'x at 77, 136-37, 251, 263-64. And the lone eyewitness failed to identify Petitioner twice. *See* App'x at 231-32, 238-39, 263-64.

18)     The Report does not acknowledge the record evidence of the conflict's adverse effect on counsel's cross-examination. *See, e.g.*, App'x at 491-93, 501-02, 523. As the exchanges during cross-examination reflect, trial counsel's credibility became an issue, leaving him as more of a witness than an advocate.

19)     The Report incorrectly states that counsel withdrew from representing the informant ten days before the start of Petitioner's trial. (Rep't at 5, 14). As reflected in the federal court docket, the motion to withdraw was granted seven days before the start of Petitioner's trial. *United States v. Thomas Taylor*, No. 1:07-CR-00033, at Doc. 17 (M.D. Pa.).

(Doc. 43, pp. 1–9 (emphasis omitted) (footnotes omitted).)

For the reasons that follow, the court will sustain the objections Taylor raised regarding what standard the Superior Court applied and whether it expressly adopted the PCRA court's reasoning. The court will overrule the remaining objections and will adopt the remaining portions of the report and recommendation.

**S**TANDARD OF **R**EVIEW

## A. Review of a Magistrate Judges' Report and Recommendation

When a party objects to a magistrate judge's report and recommendation, the district court is required to conduct a de novo review of the contested portions of the report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district court may accept, reject, or modify the magistrate judge's report and recommendation in whole or in part. 28 U.S.C. § 636(b)(1). The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.* "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)).

When a party raises only general objections to a report and recommendation, a district court is not required to conduct a de novo review of the report and recommendation. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). "To obtain de novo determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report." *Id.* at 6. Thus, when reviewing general objections to a report and recommendation, the

court's review is limited "to ascertaining whether there is 'clear error' or 'manifest injustice'" on the face of the record.  *Boomer v. Lewis*, No. 3:06-CV-00850, 2009 WL 2900778, at *1 (M.D. Pa. Sept. 9, 2009).

De novo review is not required for portions of a report and recommendation to which no objections have been raised.  *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).  Instead, the court is only required to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Id.* (quoting Fed. R. Civ. P. 72 advisory committee's note to 1983 addition).

## B. Federal petition for a writ of habeas corpus where a state court has already adjudicated a petition on the merits

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings."  *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  *Id.*  States also have a recognized interest in

12

the finality of convictions that have survived direct review within the state court system.  *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## DISCUSSION

### A. The court will overrule in part and sustain in part Taylor's specific objections.

#### 1. The court will overrule Taylor's objection to the portions of the report and recommendation quoting the Superior Court opinion.

In objection 11, Taylor objects to the portions of the report and recommendation quoting portions of the Superior Court's opinion.  (Doc. 43, p. 6.) Specifically, Taylor objects to the quotation which stated that to satisfy his burden of proof Taylor had to "identify confidential information" possessed by his trial counsel relating to the representation of the Thomas.  (*Id.*)

13

In the context of his report, Judge Saporito clearly included this quotation to explain the Superior Court's findings and conclusions. The quotation serves that function by clearly and accurately stating the Superior Court's conclusion and reasoning. In reality, Taylor is objecting to the Superior Court's opinion and not the report and recommendation, which is not a proper objection at this stage. Therefore, the court will overrule this objection.

> **2. The court will sustain Taylor's objections related to the description of the standard which the Superior Court applied and whether it adopted the PCRA court's reasoning.**

Taylor raises various specific objections to the report and recommendation's characterization of the Superior Court's decision. In most of these objections, Taylor asserts that the Superior Court applied the *Strickland* standard, while the report and recommendation states that, like the PCRA court, the Superior Court applied *Cuyler*. For the following reasons, the court will sustain these objections.

In objection 2, Taylor "objects to the statement in the Report that the Pennsylvania Superior Court rejected the conflict of interest claim by applying the 'same legal standard' employed by the PCRA court." (Doc. 43, p. 2.) Instead, Taylor asserts, the PCRA court applied the *Cuyler* standard whereas the Superior Court applied the *Strickland* standard. (*Id.*)

The report and recommendation correctly states that the Superior Court applied *Commonwealth v. Johnson*, 139 A.3d 1257, 1272 (Pa. 2016). (Doc. 38,

p. 12.)  It also noted that courts in the Third Circuit have found *Johnson* to be "not contrary" to the standard in *Strickland*.  (*Id.* (citing *Johnson v. Link*, Civ. No. 17-2624, 2019 WL 11274845, at *13–*14 (E.D. Pa. Dec. 23, 2019)).)  The report then noted that the PCRA court had "likewise applied the same legal standard, citing to a different but substantively identical decision by the Pennsylvania supreme court, *Commonwealth v. Pierce*, 527 A.2d 973, 975–76 (Pa. 1987)."  (*Id.* at 12–13.)

The report is correct that the PCRA court cited the standard in *Pierce*.  But the PCRA court then proceeded to explain that, in "matters of conflict of interest claims, the prongs are somewhat different." *Taylor*, 2017 WL 1952702, at *4. The PCRA court went on to cite the *Cuyler* standard.  *Id.*  The PCRA court then proceeded to analyze the facts of Taylor's case under the *Cuyler* standard.  The PCRA court concluded that Taylor had failed to meet the *Cuyler* standard.  The conflict, though it was found to be an actual conflict, "was resolved, without adverse action to the defendant, during the time that existed during the stages of legal representation of the actual conflict. The termination and waiver freed defense counsel to vigorously and zealously represent his client, which the record bears out." *Id.* at *9.  For that reason, the PCRA court dismissed Taylor's petition.

Thus, Taylor is correct in asserting that the PCRA court applied the *Cuyler* standard.  Therefore, the court will sustain objection 2 and decline to adopt the

portion of the report and recommendation which states that the PCRA court applied the same legal standard as the Superior Court.

In objection 3 Taylor objects to the portion of the report and recommendation stating that the Superior Court "expressly adopted the reasoning of the PCRA court by reference and by appending a copy of the PCRA court's opinion as an attachment to the opinion." (Doc. 43, p. 2 (quoting Doc. 38, p. 12).) Taylor asserts that, instead, the Superior Court adopted only "the relevant factual and procedural background" of the PCRA court's opinion. (Doc. 43, p. 2 (quoting *Taylor*, 2017 WL 1952702, at *1).)

The court agrees with Taylor that the Superior Court did not expressly adopt the reasoning of the PCRA court by reference. Therefore, the court will decline to adopt the report and recommendation insofar as it states that the Superior Court expressly adopted the reasoning of the PCRA court.

In objection 8, Taylor opposes Judge Saporito's statement that both the PCRA court and the Superior Court denied his petition because he failed to show that attorney Gutkin's representation "adversely affected the performance of defense counsel at trail." (Doc. 43, p. 4 (quoting Doc. 38, pp. 15–16.) Taylor argues that the Superior Court instead denied his claim based on the distinct *Strickland* standard. (*Id.*)

Taylor is correct.  The Superior Court denied his claim based on application of the *Strickland* standard.  For that reason, the court will decline to adopt the portion of the report and recommendation stating that the Superior Court denied Taylor's petition because he failed to show an adverse effect.

In the first point in objection 9, Taylor opposes the report and recommendation insofar as it "mischaracterizes the Superior Court's holding by stating that it 'expressly and extensively' addressed Petitioner's claim under an 'adverse impact' standard."  (Doc. 43, p. 5 (quoting Doc. 38, p. 16 n.10).)

This portion of the report and recommendation states that the PCRA court and Superior Court both discussed the relevant factual background surrounding attorney Gutkin's withdrawal of representation of Thomas.  It also concludes, as Petitioner notes in his objections, that both courts "expressly and extensively considered whether the conflict had an adverse impact on defense counsel's cross-examination of Thomas, finding none."  (Doc. 38, p. 16 n.10.)

But, as noted above, the Superior Court did not directly address *Cuyler's* "adverse effect" standard.  Therefore, the court will decline to adopt the portion of the report and recommendation which states that *both* state courts applied this standard.

In objection 12, Taylor objects to the report and recommendation characterizing the Superior Court's opinion as "first reviewing for 'adverse effect'

and then for whether [Taylor] 'otherwise demonstrated prejudice.'" (Doc. 43, p. 6–7.) Taylor asserts that the Superior Court's review was based solely on *Strickland* and not the "adverse effect" standard. (*Id.*) Taylor is correct. For that reason, the court will decline to adopt the report and recommendation's characterization of the Superior Court's decision as reviewing for "adverse effect."

### 3. The court will sustain Taylor's objection related to a certificate of appealability, which the court will issue.

Taylor objects to Judge Saporito's recommendation that a certificate of appealability not issue. (Doc. 43, p. 8.) Although the court concludes below that Taylor's petition ultimately fails on the merits, reasonable jurists could disagree. Therefore, the court will sustain Taylor's objection and will issue a certificate of appealability.

### B. The court will adopt the remaining portions of the report and recommendation.

In his brief in support of his objections, Taylor does not address objections 16, 17, 19, or the second bullet point in objection 9. Therefore, the court will treat these objections as general.

Additionally, objections 1, 4, 5, 6, 10, 13, and 14 either merely reargue points that Taylor provided in his traverse or disagree with the ultimate conclusions of the report and recommendation. Therefore, the court will also treat these objections as general.

In objection 7, Taylor protests the report and recommendation's stating that attorney Gutkin's conflict of interest continued "until the attorney-client relationship between counsel and witness was terminated." (Doc. 43, p. 4.) Instead, Taylor suggests that the Pennsylvania Rules of Professional Conduct provide that the duties of an attorney to a former client continue after representation ends.

To succeed with this argument, Taylor has a high bar to meet. He must show that the Superior Court, by concluding that attorney Gutkin's actual conflict was terminated prior to Taylor's trial, was unreasonable based on law or fact. Taylor fails to cite any precedent of the United States Supreme Court establishing that Rules of Professional Conduct are determinative in whether an actual conflict of interest exists. Actually, Taylor fails to cite any precedent by any court relating to the Rules of Professional Conduct.

Absent Supreme Court precedent to the contrary, the court cannot conclude that the Superior Court unreasonably applied the law by finding that attorney Gutkin's actual conflict ended prior to Taylor's trial. Nor has Taylor established that this decision by the Superior Court was an unreasonable determination of fact. Because Taylor lacks a legal or factual argument for this objection, the court will treat it as general.

Having reviewed these remaining objections, the court concludes that Taylor merely disagrees with Judge Saporito's analysis and conclusion. Accordingly, upon giving "reasoned consideration" to the record and the parties' arguments, the court finds no clear error or manifest injustice in Judge Saporito's report. Therefore, the court will overrule these objections and adopt the related portions of the report and recommendation.

Lastly, the court has reviewed the uncontested portions of the report and recommendation. After giving "reasoned consideration" to the uncontested portions of the report and recommendation, the court finds that Judge Saporito's analysis is well-reasoned and fully supported by the record and applicable law. *See City of Long Branch*, 866 F.3d at 99 (quoting *Henderson*, 812 F.2d at 878). The court will adopt these portions of the report and recommendation in full.

### C. The court makes the following additional findings.

As Taylor notes in his brief in support of objections to the report and recommendation, determining whether an actual conflict exists is a "fact sensitive inquiry." (Doc. 44, p. 34.) The Superior Court engaged in this fact sensitive inquiry, reviewing the evidence of two hearings that the PCRA court held. It concluded that at the time of trial, no actual conflict existed because the conflict had been resolved. Accordingly, when addressing Taylor's petition, it did not

apply the standard for an actual conflict under *Cuyler*.  Instead, it applied the appropriate *Strickland* standard.

Taylor has failed to establish that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Therefore, in accordance with the reasoning and outcome of Judge Saporito's report and recommendation, the court will deny his petition. (Doc. 38, pp. 19–21.)

## CONCLUSION

Accordingly, **IT IS ORDERED AS FOLLOWS**:

1) The court **DECLINES TO ADOPT** the portions of the report and recommendation which state that the Superior Court applied the "same legal standard" as the PCRA court, "expressly adopted the reasoning of the PCRA court by reference," denied Taylor's petition based on his failure to show a purported conflict of interest "adversely affected the performance of defense counsel at trial," or addressed Taylor's claim under an "adverse impact" or "adverse effect" standard. The court also **DECLINES TO ADOPT** the portion of the report and recommendation which recommended that this court decline to issue a certificate of appealability.

2) The court **ADOPTS** the remaining portions of the report and recommendation.

3)    Petitioner Taylor's petition is **DENIED AND DISMISSED WITH PREJUDICE**.  (Doc. 1.)

4)    The court **ISSUES** a certificate of appealability.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated:  June 22, 2023